**United States District Court**
For the Northern District of California

1

2

3

4

5                                    UNITED STATES DISTRICT COURT

6                                   NORTHERN DISTRICT OF CALIFORNIA

7

8    COMCAST OF CALIFORNIA III, INC., a            No. C-05-0718 EMC
     California Corporation,

9
                    Plaintiff,

10                                                  **REPORT AND RECOMMENDATION**
             v.                                     **RE PLAINTIFF'S MOTION FOR**
                                                    **DEFAULT JUDGMENT**
11   STEPHANE TARDIF, *et al.*,                     **(Docket Nos. 15, 17)**

12                  Defendants.

13   _____/

14

15

16          On June 8, 2005, Plaintiff Comcast of California III, Inc. ("Comcast") moved for default

17   judgment against Defendants Stephane Tardif and Jacques Tardif ("the Defendants").  Because

18   Defendants have not appeared in this action and have not consented to the jurisdiction of the

19   undersigned, the Court issues this report and recommendation on the motion since it is a dispositive

20   motion.  Having considered all the papers and evidence submitted therewith, the Court hereby

21   recommends that the motion for default judgment be GRANTED as to Stephane Tardif and

22   DENIED as to Jacques Tardif for incomplete service of process.

23                   **I.     FACTUAL & PROCEDURAL BACKGROUND**

24          On February 17, 2005, Comcast filed a complaint against the Defendants for (1) violation of

25   the Cable Communications Act, 47 U.S.C. § 553 ("Cable Communications Act" or "the Act"); (2)

26   unjust enrichment; (3) imposition of a constructive trust; and (4) violation of California Penal Code

27   § 593d.  In its complaint, Comcast alleged as follows: Comcast, a California corporation with its

28   principal place of business in Santa Clara, California, is the owner and operator of a cable television

**United States District Court**
For the Northern District of California

1   system.  *See* Compl. ¶¶ 2, 5.  Comcast offers subscribers various levels or "packages" of cable

2   programming; subscribers are authorized to receive only the level of programming which he or she

3   has purchased.  To protects its programming from unauthorized reception, Comcast encodes or

4   "scrambles" its signal.  A device known as a "converter", which incorporates another device known

5   as a "decoder", descrambles the signal, thereby allowing the programming to be viewed clearly on

6   the subscriber's television.  *See id.* ¶¶ 3, 4.

7          Taking Comcast's allegations as true on this motion for default judgment, Defendants are

8   residents of Quebec, Canada.  See Compl. ¶¶ 3, 4.  Defendants sold electronic equipment used for

9   the sole purpose of producing and distributing illegal cable descrambling equipment in violation of

10  the Cable Communications Act.  Compl., ¶¶ 19-21.  Each of these devices is capable of

11  circumventing the security system Comcast designed to protect its programming from unauthorized

12  reception.  *See id.* ¶ 20.  Therefore, purchasers of these descrambling devices may access Comcast's

13  programming without paying for it.  *See id.*.

14         Defendants have advertised these products on at least two websites they operate, both of

15  which have registered addresses in Berkeley, California.  *Id.*, ¶ 22.  Defendants have made sales to

16  customers in California as well as many other states in the United States.  *Id.*

17         After first discovering Defendants' online eBay auction site, Comcast's security manager,

18  Kevin Sandle, purchased one such descrambler device from Defendants' website after successfully

19  bidding for it on November 3, 2003.  Sandle Decl. in Support of Pl's Suppl. Mem., ¶ 3 and Ex. A

20  (Docket No. 41).  Mr. Sandle made a payment of eighty-six dollars ($86) to Defendant Jacques

21  Tardif by sending a money order payable to Jacques Tardif.  *Id.*, Ex. B.  Mr. Sandle sent and

22  received e-mail correspondence with Defendant Stephane Tardif about the descrambler purchase.

23  *Id.*, ¶ 4 and Ex. C.  Mr. Sandle received the descrambler on December 11, 2003.  *Id.*, ¶ 5.

24         The e-mail address that Mr. Sandle used to contact Stephane Tardif

25  [visionseries@hotmail.com] appears on the PayPal account information for Stephane Tardif, which

26  also lists both Stephane and Jacques Tardif's mailing addresses.  *Id.*, ¶ 4; Sandle Decl. in Support of

27  Add'l Brief, Ex. 2 (Docket No. 34).  The allegations and evidence presented by Comcast

28

**United States District Court**
For the Northern District of California

1   demonstrate that Defendants Jacques and Stephane were jointly involved in the sale of descrambling

2   devices.

3   A       Service of Summons and Complaint

4           Comcast attempted service of the summons and complaint on both Defendants on February

5   17, 2005.  Service of the summons and complaint was attempted via registered, international mail,

6   addressed to Stephane Tardif at 78 Ch De L'Ile-Claude, Ile-Perrot, Quebec, Canada, and Jacques

7   Tardif at 70 Ch De L'Ile-Claude, Ile-Perrot, Quebec, Canada.  The Court finds that service was

8   effected only as to Stephane Tardif, but not as to Jacques Tardif.

9           To establish service of the summons and complaint, Comcast has submitted the return receipt

10  for the registered international mail delivered to Defendant Stephane Tardif.  *See* Pl's Response to

11  Order re Briefing and Evidence, Ex. B (Docket No. 24).  Comcast has not received a return receipt

12  for the mail delivered to Defendant Jacques Tardif.  It did receive verification from the United States

13  Postal Service tracking system that the registered international mail was delivered to Jacques

14  Tardif's address on March 12, 2005.  Platt Decl., ¶¶ 5-8 and Ex. B (Docket No. 21).

15          Comcast asserts that service via certified international mail to Canada is proper, citing

16  California's long-arm statute and the Hague Convention treaty.  *Id.*, ¶ 9.  The Ninth Circuit,

17  however, has delineated the circumstances under which service by international mail may be

18  effected.  The Court finds that Comcast has met the requirements of Rule 4(f) for service of process

19  on Defendant Jacques Tardif by using registered international mail with return receipt.

20          Rule 4(f) authorizes service upon individuals in a foreign country by methods of service

21  authorized by international agreements: "Unless otherwise provided by federal law, service upon an

22  individual from whom a waiver has not been obtained and filed, other than an infant or an

23  incompetent person, may be effected in a place not within any judicial district of the United States:

24  (1) by any internationally agreed means reasonably calculated to give notice, such as those means

25  authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents

26  (the 'Hague Convention')[.]"  Fed. R. Civ. Proc. 4(f)(1).

27          The Hague Convention, ratified by the United States in 1965, is a multilateral treaty that

28  applies, between signatory countries, "in all cases, in civil or commercial matters, where there is

3

occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, art. 1. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). The Convention "was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Id.* at 699. The California Code of Civil Procedure provision cited by Comcast to authorize its use of certified international mail is therefore not controlling here. *See* Platt Decl., ¶ 9 (Docket No. 21).

"The primary means by which service is accomplished under the Convention is through a receiving country's 'Central Authority'" to receive requests for service of documents from another member country. *Brockmeyer,* 383 F.3d at 801 (citing Hague Convention, art. 2). Comcast did not seek service through Canada's central authority.

The Convention also provides, however, that as long as the receiving state does not object, the Convention "shall not interfere" with "the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Convention, art. 10(a). The Ninth Circuit has held that Article 10(a) of the Convention permits service of process by international mail if authorized by the law of the forum state and provided the receiving country does not object. *Brockmeyer*, 383 F.3d at 804. Both the United States and Canada are signatories to the Hague Convention. Canada has stated that it does not object to service by postal channels, as referred to in Article 10(a). Hague Convention, n.3 (Instrument of Accession of Canada, Sept. 26, 1988) at II.A

Notwithstanding the Hague Convention's allowance of service by mail, and lack of objection by Canada to service by mail, this Court must find affirmative authorization in the laws of the United States, as the forum state, for service by registered international mail. *Brockmeyer*, 383 F.3d at 804. In this regard, the Court looks to the Federal Rules of Civil Procedure. Turning to the methods of service authorized by the Rules, the Ninth Circuit has recognized two authorized methods of service by international mail: (1) "service abroad by mail for which a signed receipt is required, when such mail is addressed and mailed by the clerk of the federal district court in which

United States District Court
For the Northern District of California

the suit is filed" pursuant to Rule 4(f)(2)(C)(ii);[1] or (2) alternative methods of service, such as ordinary mail or email, where the plaintiff obtains prior court approval for the mailing procedure, pursuant to Rule 4(f)(3).[2]   Here, Comcast did not follow either approved procedure for service by mail.  It did not seek assistance by the Clerk of this Court; nor did Comcast obtain a prior court order.

The Ninth Circuit also recognized that Rule 4(f)(2)(A)[3] provides an alternative method.  It "affirmatively authorizes service by means used in the receiving country for service by means used in the receiving country for service in an action in its courts of general jurisdiction."  *Brockmeyer*, 383 F.3d at 804-06.  In *Brockmeyer*, the Ninth Circuit concluded that Rule 4(f)(2)(A) does not authorize service on foreign defendants by international mail to England.

In *Brockmeyer*, the trademark owner served the foreign defendant by sending the summons and complaint for trademark infringement by ordinary first class mail to a post office box in England without a return receipt.  The Ninth Circuit found that the plaintiffs had neither effected service through England's Central Authority under the Hague Convention in accordance with Rule 4(f)(1), nor effected service by registered mail by the clerk of the court in accordance with Rule 4(f)(2)(C)(ii); nor did it obtain a prior court order in accordance with Rule 4(f)(3).  The plaintiffs "simply dropped the complaint and summons in a mailbox in Los Angeles, to be delivered by ordinary, international first class mail."  *Id.* at 809.  The Ninth Circuit then held that Rule 4(f)(2)(A)

---

[1]  Rule 4(f)(2)(C)(ii) provides for service outside the United States, unless prohibited by the law of the foreign country, by "any form of mail requiring a signed receipt, *to be addressed and dispatched by the clerk of the court* to the party to be served."  Fed. R. Civ. Proc. 4(f)(2)(C)(ii) (emphasis added).

[2]  Rule 4(f)(3) provides for service abroad "by other means not prohibited by international agreement *as may be directed by the court*."  Fed. R. Civ. Proc. 4(f)(3) (emphasis added).

[3]  Rule 4(f)(2)(A) provides in pertinent part as follows:

(f)     [S]ervice . . . may be effected in a place not within any judicial district of the United States:

***

(2) if there is no internationally agreed  means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:
        (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction[.]

United States District Court

For the Northern District of California

1    does not authorize service of process by ordinary first class international mail upon a defendant in

2    England. *Brockmeyer*, 383 F.3d at 808. The court noted that the British government objected to a

3    proposed revision to Rule 4 that would allow assessment of costs against foreign defendants who

4    failed to waive service upon receipt via mail. *Id.* at 807-08. The Ninth Circuit inferred that the

5    British government understood Rule 4(f) not to permit service by ordinary, international first class

6    mail against a defendant in England, because if it were so, "a plaintiff would never need to send a

7    request for waiver of service by international first class mail." *Id.* at 808. Given the British

8    government's objection to service by mail, the Ninth Circuit concluded that Rule 4(f)(2)(A) does not

9    permit service by regular international mail, at least to England.

10        The Ninth Circuit did not address the question of whether service by mail is proper where, as

11   here, it is addressed to the party to be served and is sent by a form of mail requiring a signed return

12   receipt, and the host nation permits such service.

13        The Court thus considers whether Comcast has effected service of process under Rule

14   4(f)(2)(A), which permits service on a foreign defendant "in the manner prescribed by the law of the

15   foreign country for service in that country in an action in any of its courts of general jurisdiction."

16   The Federal Courts Rules of Canada provide for service by registered mail: "Personal service of a

17   document on an individual, other than an individual under a legal disability, is effected . . . by

18   mailing the document by registered mail to the individual's last known address, if the individual

19   signs a post office receipt." Consolidated Regulations of Canada, Federal Courts Rules (Federal

20   Courts Act) SOR/98-106, Rule 128(1)(e). The Court further notes that in its accession to the Hague

21   Convention, Canada states that "Canadian law allows the use of postal channels to serve Canadian

22   documents to persons abroad." Hague Convention, n.3 at II.B.

23        The Court finds that Comcast's use of registered mail with return receipt signed by the

24   recipient is "'likely to give the actual notice required by United States due process concepts.'"

25   *Brockmeyer*, 383 F.3d at 806 (citation omitted). Moreover, the purpose of Rule 4(f)(2)(A) was to

26   provide an alternative method of service "that is likely to create least objection in the place of

27   service." *See id.* at 808 (citing 1963 Committee Notes to former Rule 4(i)(1)(A), the predecessor to

28   Rule 4(f)(2)(A)). In light of Canadian Federal Court Rules governing personal service on domestic

1   and foreign defendants, the Court finds permitting service by registered international mail with

2   return receipt would not raise a substantial objection.  *Cf. Fireman's Fund Ins. Co. v. Fuji Electric*

3   *Systems Co., Ltd.*, 2005 WL 628034 at *3 (N.D. Cal. 2005) (finding that the law of Japan forbids

4   service of process by Federal Express delivery, and granting motion to dismiss for insufficient

5   service of process).

6          Comcast has therefore effected service of process on Defendant Stephane Tardif, as

7   evidenced by the return receipt of the registered mail sent to him at 78 Ch De L'Ile-Claude**.**

8   Comcast has not, however, properly effected service on Defendant Jacques Tardif.[4]  Though the

9   Court does not fault Comcast for the absence of a return receipt, the method of service approved by

10  Canadian law requires that "the individual signs a post office receipt."  Consolidated Regulations of

11  Canada, Federal Courts Rules SOR/98-106, Rule 128(1)(e), *supra*.  *See R. v. Lewko*, 2001

12  CarswellNat 10, 2001 WL 443717  (Fed. Ct. Trial Div.) (dismissing application for default judgment

13  for lack of proof of service under Rule 128(1)(e) where post office receipt was signed by person

14  other than defendant).  No such signed receipt was obtained from Jacques Tardif.  Comcast has not

15  submitted any legal authorities demonstrating its attempted service -- sending by registered mail but

16  without having received a signed receipt -- satisfies Canadian law.

17  B.     Request to Enter Default

18         Comcast filed and served requests for entry of default and for default judgment upon

19  Defendants' failure to answer the complaint.  Because neither Stephane Tardif nor Jacques Tardif

20  responded, the Clerk of the Court, upon Comcast's request, entered default as to both of them on

21  July 22, 2005.  *See* Docket No. 22.  "The general rule of law is that upon default the factual

22  allegations of the complaint, except those relating to the amount of damages, will be taken as true."

23  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (internal quotation marks

24  omitted).

25

26  _____

27         [4]  The Court also notes that Comcast mailed its requests for entry of default and for default
    judgment (Docket Nos. 18, 20) to Jacques Tardif at an apparently incorrect address of 78 Ch De L'Ile-

28  Claude.  This underscores the importance of insuring that Jacques Tardif did in fact receive the
    summons and complaint.  A signed receipt is best proof of that.

United States District Court
For the Northern District of California

1    On June 8, 2005, Comcast filed this motion for default judgment against the Defendants,

2    seeking relief only for its Cable Communications Act claim.  Specifically, Comcast asks the Court to

3    award it the profits Defendants earned by selling the unauthorized devices pursuant to 47 U.S.C. §

4    553(c)(3)(A)(i).  *See* Plaintiff's Additional Brief in Response to the Court's "Order Re Further

5    Briefing in Support of Plaintiff's Motion for Default Judgment" at 2, Docket No. 32.

6    To support its damages calculation based on gross profits, Comcast reviewed Defendants'

7    electronic sales records produced by PayPal, an internet-based payment service.  Comcast located

8    the occurrences of several keywords reflecting the names of illegal cable descrambling devices from

9    the "Transaction Download" spreadsheet which details all sales through Defendants' PayPal

10   account:  "clearview," "viewtek," " oz-s," " gs2," "gs3," "davinci," "clearmax," "chip3," "calibur,"

11   "ranger and 9000," "platinum," "media and 2200," "viewmax," "cobra and vision," "coolsonic,"

12   "stargate," "stealth and vision," and "view and 4000."  Sandle Decl. in Support of Add'l Brief, ¶¶ 4,

13   5 (Docket No. 34).  For each transaction in which the particular keyword appeared, Comcast took

14   the corresponding dollar amount and then totaled the dollar value of all such transactions, reflecting

15   all occurrences on the Transaction Download spreadsheet related to the sale of cable descrambling

16   equipment.  *Id.*, ¶ 5 and Ex. 3.  Out of total PayPal sales of $1,422,142.12, Defendants' sales of

17   descrambling devices yielded gross revenue of $1,009,512.90.  *Id.*, ¶ 5.

18   To support an alternate damages calculation of statutory damages-per-device under the Cable

19   Communications Act, Comcast also searched Defendants' PayPal records for sales of ViewmaxPro

20   descramblers, and discovered that Defendants distributed at least two thousand one hundred and

21   twenty-five (2,125) such descrambling devices.  Sandle Decl. in Support of Prove Up on Damages, ¶

22   2 (Docket No. 26).  The sole purpose of the ViewmaxPro is to descramble Comcast's encoded cable

23   television signal.  *Id.*, ¶ 4.  Comcast has since waived its request for damages per device under the

24   California Penal Code.  *See* Add'l Brief, ¶ 3 (Docket No. 32).  The Cable Communications Act

25   provides for statutory damages of $250 to $10,000 "for all violations involved in the action," but not

26   per device.  47 U.S.C. § 553(3)(A)(ii).

27   Since the Defendants are alleged to have violated the Act willfully for purposes of

28   commercial advance or private financial gain, *see* Compl. ¶ 31, Comcast also seeks enhanced

United States District Court

For the Northern District of California

1  statutory damages in the amount of $50,000.  Thus, Comcast asks for a total damage award of

2  $1,059,512.90.

3  **II.   DISCUSSION**

4  A.   Legal Standard

5      The disposition of a motion for default judgment lies within the discretion of the court.[5]  *See*

6  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to

7  enter a default judgment is a discretionary one.").  Factors which inform the exercise of discretion as

8  to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the

9  merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at

10 stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default

11 was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

12 Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.

13 1986).

14 B.   Personal Jurisdiction

15     There is a threshold question as to whether this Court has personal jurisdiction over

16 Defendant Tardif, a resident of Canada.  Where there is no applicable federal statute governing

17 personal jurisdiction, a court applies the law of the state in which the district court sits.  *See*

18 *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "Because

19 California's long-arm jurisdictional statute is coextensive with federal due process requirements, the

20 jurisdictional analyses under state law and federal due process are the same.  For a court to exercise

21 personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum

22 contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional

23 notions of fair play and substantial justice.'"  *Id.* at 800-01.

24

25

26     [5]  Under Federal Rule of Civil Procedure 55, a court may not enter a default judgment against
27 an unrepresented minor, an incompetent person, or a person in military service.  *See* Fed. R. Civ. P.
   55(b)(2).  Given the sophistication of the Defendants' business, the volume of transactions, scope of
28 their marketing and the stability of their residences, the Court infers that none of the disqualifying
   factors pertain here.  Certainly, neither Defendant has made any attempt to assert any such defenses.

9

**United States District Court**
For the Northern District of California

1    There are two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. "If

2    a defendant's activities within the forum state are 'continuous and systematic' or 'substantial,' the

3    state has a sufficient relationship with the defendant to assert general jurisdiction." *Lake v. Lake*,

4    817 F.2d 1416, 1420 (9th Cir. 1987) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437,

5    445, 447 (1952)).  "If, however, a forum state cannot assert general jurisdiction over the defendant,

6    it may still assert specific jurisdiction depending on the quality and nature of the defendant's

7    contacts with the forum state in relation to the cause of action." *Id.* at 1421 (citation omitted).

8    Here, the Court need not consider whether Comcast has met the more exacting standard of

9    general jurisdiction because the allegations and factual submissions support the exercise of specific

10   jurisdiction over Defendant.  Specific jurisdiction exists if the following factors are shown: "(1) the

11   nonresident defendant must purposefully direct his activities or consummate some transaction with

12   the forum or residents thereof; or perform some act by which he purposefully avails himself of the

13   privilege of conducting activities in the forum, thereby invoking the benefits and protections of its

14   laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related

15   activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e.

16   it must be reasonable." *Lake*, 817 F.2d at 1421.  In the case at bar, Defendant Tardif has had

17   substantial contacts in California[6] through their joint activity in marketing and selling descrambling

18   devices:  (1) Defendants marketed their products in California through the internet; (2) Defendants

19   established two websites through which they sold the boxes, which are both registered at an address

20   in Berkeley, California;[7] (3) Defendants produced decoding boxes from a California source (Compl.,

21

22   [6] As no evidentiary hearing has been held on the issue of jurisdiction, Comcast need only make
     a prima facie showing of personal jurisdiction. *See Brand v. Menlove Dodge*, 796 F.2d 1070, 1072 (9th
23   Cir. 1986).

24   [7] Comcast alleges that "Defendants advertise or have advertised their products on at least two
     (2) websites: alldescramberboards.com and originalcablebox.com.  Both of these websites have
25   registered addresses in the United States at 2342 Shattuck Avenue, B400, Berkeley, CA, 94704."
     Compl., ¶ 22.  Comcast has submitted supplemental information based on a domain name search
26   evidencing that the website alldescramberboards.com was registered to Defendants in California.  The
     register page for the alldescramberboards.com website lists an address of 2342 Shattuck Ave., B400,
27   Berkeley, CA 94704.  Further Suppl. Brief, Ex. A (Docket No. 43).  Comcast was unable to locate a
     domain name search on the originalcablebox.com website, although the PayPal records list the following e-
28   mail    addresses    related    to    that    website:    ocbsales@originalcablebox.com    and
     sales.ebay@originalcablebox.com.  Sandle Decl. in Support of Additional Brief, , Ex. 1 (Docket No.

**United States District Court**

For the Northern District of California

¶ 21); (4) they made substantial sales to California.  The Court examines the three factors for specific jurisdiction.

1.     Purposeful Availment

The purposeful availment requirement is satisfied if the defendant takes some deliberate action within the forum state or creates continuing obligations to forum residents.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997).  The defendant's physical presence in the forum state is not necessary, "provided that his efforts are purposefully directed toward forum residents."  *Id.*  Where the defendant operates a website, courts look to "the level of interactivity and commercial nature of the exchange of information that occurs on the Website" to determine if sufficient contacts exist.  *Id.* at 418 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D.Pa. 1997).  Here, Defendant did more than create a passive website accessible to anyone over the Internet, the mere existence of which does not by itself rise to the level of substantial contacts to warrant specific personal jurisdiction.  *Cybersell*, 130 F.3d at 418.  Rather, Defendant operated an interactive website through which California consumers purchased the descrambler devices, which were then delivered to California addresses.  *See* Platt Decl., Ex. 2 (PayPal transaction spreadsheet) (Docket Nos. 25 and 45).  The fact that consumers purchased the descramber devices directly from Defendant's websites through a third-party payor, PayPal, demonstrates that these were interactive, not passive.  *See IO Group, Inc. v. Pivotal, Inc.*, 70 U.S.P.Q.2d 1458, 2004 WL 838164 at *4 (N.D. Cal., April 19, 2004) (finding specific jurisdiction and denying motion to dismiss).  Furthermore, Defendant's website, alldescramberboards.com, has a registered address in the United States at 2342 Shattuck Avenue, B400, Berkeley, CA, 94704. Further Suppl. Brief, Ex. A (Docket No. 43).

In addition, it appears that a substantial portion of Defendant's sale were to California.  In reviewing a sampling of Defendant's voluminous PayPal transaction records, the Court found that of those sales with an identifiable shipping address, about one in ten such sales, or roughly ten percent, were shipped to California.  Such sales demonstrate that Defendant had substantial commercial

34).

1  contacts with California, purposefully marketing and selling illegal descramblers to a substantial

2  number of California residents.  This is sufficient to warrant the exercise of personal jurisdiction.

3  *See Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (finding minimum

4  contacts sufficient for specific personal jurisdiction where Defendant maintained commercial

5  website and made actual sales to California citizens).

6       2.   <u>Defendants' Forum-Related Activities</u>

7       To show that the contacts constituting purposeful availment gave rise to the current suit, a

8  plaintiff must also show that "but for" the defendant's forum-related conduct, the injury would not

9  have occurred.  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

10  Defendant sold descramber devices in violation of the Cable Communications Act to a substantial

11  number of California customers.  Defendant's contacts with California are therefore closely related

12  to the transactions which comprise the gravamen of the Complaint.

13       3.   <u>Reasonableness</u>

14       Finally, the Court considers the several factors to determine the reasonableness of exercising

15  jurisdiction here, *i.e.*, whether it comports with fair play and substantial justice, *Bancroft & Masters*,

16  223 F.3d at 1088 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)):

17       (1) The extent of Defendant's purposeful injection into the forum state:  Defendant made

18       actual sales of illegal descrambler devices to internet buyers in California, actively

19       advertising via websites based in California;

20       (2) The burden on Defendant:  although he resides in Canada, Defendant has registered at

21       least one website to a Berkeley address and made actual sales in California.  In view of these

22       activities and the volume of sales, the burden of defending the suit in California would not be

23       so great an inconvenience as to deprive Defendant of due process.  *Panavision Int'l, L.P. v.*

24       *Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998);

25       (3)  The extent of conflict with the sovereignty of Defendant's nation:  the sovereignty

26       barrier is higher than where the defendant resides in another U.S. state.  *Pacific Atlantic*

27       *Trading Co., Inc. v. M/V Main Express*, 758 F.2d 1325, 1330 (9th Cir. 1985).  However,

28       Canada has not stated a sovereign interest in this matter, and being in default, Defendant has

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

not raised any such interest.  The Court has considered Canada's terms of accession to the Hague Convention, which contemplate that Canadian citizens would be served in foreign lawsuits, and has deferred to the Canadian rules of service of process to find that only Defendant Stephane Tardif was properly served.  As the Court has avoided any objection to service of process by Canada, and as Defendant has availed himself of California commerce, any conflict with Canadian sovereignty is either non-existent or substantially outweighed by the reasonableness of personal jurisdiction;

(4) The interest of the forum state:  California has a strong interest in protecting cable providers doing business in the state from piracy and in providing a forum to remedy harm, especially where as here Defendant sold a significant portion (roughly ten percent) of its descramblers to Californians;

(5) The most efficient judicial resolution of the controversy:  the courts generally look to where the injury occurred and where the evidence is located, but this factor is not weighed heavily in light of modern advances in communication and transportation.  *Panavision*, 141 F.3d at 1323-24.  Here, there does not appear to be one single state or forum where an overwhelming number of witnesses or amount of evidence would be located.  This factor is neutral;

(6) The importance of the forum to the plaintiff's interest in convenient and effective relief:  Comcast is a California corporation with its principal place of business in Santa Clara, California.  Compl., ¶ 2.  This factor weighs in Comcast's favor, but is generally given little weight.  *Panavision*, 141 F.3d at 1324;

(7) The existence of an alternative forum:  Comcast has not demonstrated the unavailability of an alternative forum, and the PayPal records indicate that Defendant sold his products to buyers in states other than California, as well as in Canada.  This factor weighs against jurisdiction here.

The Court concludes that, on balance, the reasonableness factors favor the exercise of personal jurisdiction over Defendant Stephane Tardif.  All the requirements for the exercise of specific, personal jurisdiction are therefore satisfied.

**United States District Court**
For the Northern District of California

C.      The *Eitel* Factors

The Court now turns to an analysis of the *Eitel* factors to determine whether Comcast's motion for default judgment should be granted.  In its complaint, Comcast has alleged that it is a "person aggrieved" for purposes of the Act.  *See* Compl. ¶ 33.  It provides the programming that is impermissibly intercepted by the devices sold by Defendant.

For purposes of this motion, Comcast asserts only violation of the Cable Communications Act.  The Act provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).  The Act's prohibition on assisting in intercepting or receiving any such communications service extends to "the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1)."  47 U.S.C. § 553(a)(2).  A "person aggrieved" by a violation of the Act may bring a civil action for damages under its provisions.  *See* 47 U.S.C. § 553(c)(1).

Comcast has alleged that the Defendant manufactured or distributed the descrambling devices with knowledge that the devices will be used to receive Comcast's programming without authorization.  *See id.* ¶ 27; § 553(a)(1)-(2).  Taking these and other allegations as true, the Court finds that Comcast has stated a valid claim for a violation of § 553.  The complaint meets the pleading standard of Federal Rule of Civil Procedure 8(a) in that it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (citations omitted).  Furthermore, as noted above, Comcast has submitted substantial evidence of Defendant's PayPal sales records to support its allegations that Defendant sold or distributed descrambling devices.  *See* Sandle Decl. in Support of Prove Up on Damages ¶ 3 (Docket No. 26).  Comcast has also submitted evidence of an actual sale of a descrambling device by the Tardifs.  The evidence establishes that Defendant Stephane Tardif is centrally involved in these sales and is generally and jointly responsible therefor:  the PayPal

14

account is registered in his name, and he was personally corresponding by e-mail with Mr. Sandle about the sale of a descrambler device.  Sandle Decl. in Support of Add'l Brief, Ex. 2 (Docket No. 34); Sandle Decl. in Support of Pl's Suppl. Mem., Ex. C (Docket No. 41).  Consequently, the second (merits of plaintiff's substantive claim) and third (sufficiency of the complaint) *Eitel* factors weigh in favor of a default judgment against Stephane Tardif.

Consideration of the other Eitel factors also weighs in favor of granting default judgment.  If default judgment is not granted in this case, then Comcast will likely suffer prejudice because it will have no other avenue for relief.  *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D.Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  Without the deterrence value of a large money judgment against them, Defendant would likely continue selling the descrambling devices, thereby causing further prejudice to Comcast.  The sum of money at stake here is significant (over one million dollars), which would typically weigh against granting default judgment.  *See Bd. of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, *5 (N.D. Cal. Dec. 29, 2000) (holding that default judgment is favored where "[t]he amount at stake is minor in comparison to the potential loss . . . as a result of defendants' conduct.").  However, the Defendant Stephane Tardif was given proper notice that Comcast would be seeking the Defendant's profits as damages, a potentially substantial sum.  *See* Compl. at 11.  Moreover, the damages sought are based on actual sales.  Furthermore, there is little to suggest a dispute concerning material facts.  Defendant Tardif was given proper notice of the complaint and has not responded.  Thus, the Court can only conclude that the Defendant does not contest Comcast's allegations.  In any event, the documentary evidence appears rather conclusive that descrambler boxes were sold jointly by the Tardifs.

Finally, there is no evidence suggesting that the failure to answer is due to excusable neglect.  Although the Court acknowledges that "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, it appears that a merits-based decision in this case is not reasonably possible because the Defendant Stephane Tardif has never come forward to defend himself against Comcast's allegations.  He has been served with the complaint, and the request for

United States District Court
For the Northern District of California

1    entry of default and motion to enter default judgment were mailed to him.  Therefore, the Court

2    concludes that the majority of the *Eitel* factors weigh in favor of granting default judgment here.

3    D.    <u>Proof of Damages</u>

4              Because default judgment should be granted for the reasons stated above, the Court must

5    next decide the amount of damages to award Comcast.  As noted above, in a motion for default

6    judgment, the factual allegations, *except* those relating to the amount of damages, are taken as true.

7    Two measures of damages are available under the Act: (1) actual damages plus the defendant's

8    profits which are not taken into account in computing the actual damages, or (2) statutory damages.

9    47 U.S.C. § 553(c)(3)(A)(i)-(ii).  In addition, a court has discretion to increase damages by no more

10   than $50,000 if it finds that the defendant acted willfully and for purposes of commercial advantage

11   or private financial gain.  *See* 47 U.S.C. § 553(c)(3)(B).

12             1.    <u>Defendant's Profits</u>

13             Where, as here, a plaintiff seeks the actual damages plus defendant's profits measure, the

14   method for computing defendant's profits is as follows:

15                  [I]n determining the violator's profits, the party aggrieved shall be
                    required to prove only the violator's gross revenue, and the violator
16                  shall be required to prove his deductible expenses and the elements of
                    profit attributable to factors other than the violation[.]
17

18   47 U.S.C. § 553(c)(3)(A)(i).

19             To meet its burden under the statute, Comcast has come forward with proof of the

20   Defendants' gross revenue in the form of Kevin Sandle's declaration.  Mr. Sandle is employed by

21   Comcast as a Market Security Manager with ten years of experience investigating cases of cable

22   television theft.  *See* Sandle Decl. in Support of Additional Brief ¶¶ 1, 2.  As discussed above, Mr.

23   Sandle calculated the Defendants' gross revenues for the sale of descrambling devices by analyzing

24   Stephane Tardif's PayPal account records.  These records were queried with a keyword reader using

25   the names of recognized descrambler boxes.  Mr. Sandle declares that he has reviewed the spread

26

27

28

United States District Court

For the Northern District of California

sheet and each item is an illegal descrambler which serves no other purpose.  The revenue from

those sales amounts to $1,009,512.90.[8]

However, not all these sales are within the geographic area of Comcast's cable system.  They

include sales to virtually all states.[9]  Some courts have interpreted the Cable Communications Act to

permit cable companies to recover all profits attributable to a violation of the Act even if it occurred

outside the local area of the plaintiff's service area on the theory that plaintiff may act as a private

attorney general and broadly recover damages having a deterrent effect.  *See CSC Holdings, Inc. v.*

*KDE Elecs. Corp.*, 2000 WL 284005 (N.D. Ill. 3/13/00) at *16; *Time Warner Entertainment*

*/Advance-Newhouse Partnership v. Worldwide Electronics, L.C.*, 50 F. Supp. 2d 1288, 1300-01

(S.D. Fla. 1999).  However, in a more closely reasoned analysis of the statute, the district court in

*CSC Holdings, Inc. v. New Information Technologies, Inc.*, 148 F. Supp. 2d 755, 761-62 (N.D. Tex.

2001) reached a contrary conclusion.

> Nevertheless, plaintiff maintains that it is entitled to $393,497.25 in
> gross revenues received by defendants from the sale of decoders
> outside of its franchise area.  (Plf. Exh. 6).[FN6]
>
>> FN6.   The statute provides that "in determining the
>> violator's profits, the party aggrieved shall be required
>> to prove only the violator's gross revenue, and the
>> violator shall be required to prove his deductible
>> expenses and the elements of profit attributable to

---

[8]  This amount comports with the applicable statute of limitations.  Section 553(c) [providing for civil actions] of the Cable Communications Act does not contain an express statute of limitations.  Some courts have held that the limitation period of the most analogous state law analog should apply.  *Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.*, 366 F.3d 217, 224 (3rd Cir. 2004).  Others have applied the three year limitation period of the federal Copyright Act.  *Prostar v. Massachi*, 239 F.3d 669, 676 (5th Cir. 2001).  In this case, it makes no difference since the three year period for statutory claims under California Code of Civil Procedure § 338 applies to the closest analog California Penal Code § 593d (prohibiting, *inter alia*, manufacturing and distribution of any "device" designed to decode or descramble nonstandard signals carried by a subscription television system).  Since the complaint herein was filed on February 17, 2005, Comcast can recover profits on sales made on February 17, 2002 or later.  *See* Sandle Decl. in Support of Pl's Further Suppl. Brief, ¶ 4 (Docket No. 44).  That figure comes to $1,009,512.90.

[9]  In support of its motion for default judgment, Comcast submitted the PayPal transaction download spreadsheet, both in electronic and hard copy formats.  Comcast did not, however, highlight or identify which sales were in California.  For example, Comcast has identified the sales of 2,125 ViewmaxPro descrambling devices as the basis of their claim for damages, but hasn't shown how many of those were sold in California.  Sandle Decl. in Support of Prove Up on Damages, ¶ 3 (Docket No. 26).  A cursory sampling of the sales entries on the transaction download spreadsheet with identifiable shipping addresses indicates that about 10% of the sales were shipped to California.

factors other than the violation . . ." 47 U.S.C. § 553(c)(3)(A)(i).  Defendants did not offer any evidence of their deductible expenses.  Therefore, the gross revenue received by defendants equals their profit.

This argument is based on the legislative history of section 553(c)(3)(A), which states in relevant part:

> The aggrieved party, pursuant to (3)(A)(i), may recover actual damages and all profits of the violator attributable to the violation, *including those profits attributable to the violation where it also occurred outside of the local area of the individual cable system, that are not taken into account in calculating actual damages.*

H.R. 98-934, 98th Cong., 2d Sess. 85 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4722 (emphasis added).  Based on this italicized language, some courts have allowed aggrieved parties to recover all profits derived from the sale of pirate decoder devices regardless of whether the sale was made in the cable operator's franchise area.  *See CSC Holdings, Inc. v. KDE Electronics Corp.*, 2000 WL 284005 at *5 (N.D. Ill. March 13, 2000); *Time Warner Entertainment/Advance-Newhouse Partnership v. Worldwide Electronics, L.C.*, 50 F. Supp. 2d 1288, 1300-01 (S.D. Fla. 1999); *Time Warner Cable of New York City v. Cable Box Wholesalers*, 920 F. Supp. 1048 (1996) (unreported). *But see CSC Holdings, Inc. v. J.R.C. Products Ind.*, 2001 WL 315189 at *11-12 (N.D. Ill. Mar. 29, 2001) (refusing to follow *Worldwide Electronics* on grounds that actual damages and profits are primarily alternative measures of damages).  These courts reason that "Congress intended that a cable pirate's profits were to serve as an incentive to an aggrieved cable operator who acted in the interests of all cable operators by civil prosecution of such decoder seller." *Worldwide Electronics*, 50 F. Supp. 2d at 1300.

This Court declines to give the statute such a broad interpretation.  Nowhere in the legislative history to section 553 (c)(3)(A) does it appear that Congress intended to give cable operators added incentive to act as "private attorneys general" by allowing the recovery of all profits realized by a violator without regard to the specific conduct at issue.  To the contrary, Congress expressly indicated that an aggrieved party may recover "all profits of the violator *attributable to the violation,* including those profits *attributable to the violation* where it also occurred outside the local area of the individual cable system . . ." 1984 U.S.C.C.A.N. at 4722 (emphasis added).  It is the "violation" that makes a party "aggrieved" under statute.  Stated differently, a cable operator cannot be "aggrieved" by the sale of a decoder that did not result in the loss of revenue.  The "violation" referred to in the legislative history as a precondition to the recovery of profits is further qualified by the requirement that it "*also* occur[ ] outside of the local area of the individual cable system."  This suggests that a violation outside a cable operator's local service area is not separate and distinct from a violation within the area.  It might encompass a situation, for example, in which a defendant who sold pirate decoder devices in a service area also sold decoders outside the area knowing they would be brought

**United States District Court**
For the Northern District of California

1           into the local area for use. Under such circumstances, an aggrieved
           cable operator would be entitled to recover all profits realized from the
2           sale of decoders both inside and outside its local service area. In any
           event, the Court is unwilling to countenance the recovery of profits
3           that have absolutely no connection to the violations made the basis of
           the underlying suit. Accordingly, plaintiff is not entitled to these
4           damages.

5    148 F. Supp. 2d at 761-62 & n.6.

6        In addition to *CSC*'s persuasive reasoning, this Court further notes that permitting recovery

7  of profits earned from sales of devices outside the plaintiff's service area could result in double or

8  multiple recovery. If multiple cable companies brought similar suits against the same defendant,

9  each recovering the totality of all sales, defendant would be saddled with damages exceeding actual

10  sales/profits by several fold. Since the statute already specifically provides for enhancement of

11  damages under certain circumstances (sought herein as well), the Court is reluctant to conclude

12  Congress intended to impose upon violators liability for multiple damages (the extent of which turns

13  by happenstance on the number of suits by cable companies) absent a cleared indication that such a

14  result was so intended.

15       Accordingly, this Court concludes Comcast may recover only profits attributable to sales

16  within its service area. In the instant case, Comcast has not submitted specific evidence as to the

17  precise number of sales needed within its service area. Instead, Comcast has submitted a cable

18  industry overview showing that Comcast is the top provider with 34.71% of all cable subscribers

19  (21,409,000 out of 61,677,000 total subscribers) throughout the United States. Further Suppl. Brief,

20  Ex. B (Docket No. 43). Such an apportionment would render a fair result, affording Comcast a fair

21  proportion of damages for sales made on a nationwide basis, while avoiding multiple damage

22  liability. Comcast shall therefore recover 34.71% of Defendants' total gross profits.

23       Since Defendant Tardif defaulted, there is no proof in this case of their "deductible expenses

24  and the elements of profit attributable to factors other than the violation." *See* 47 U.S.C. §

25  553(c)(3)(A)(i). Therefore, Defendant has not met his burden to prove how much, if any, should be

26  deducted from gross revenue in order to determine its profits. The Court therefore awards Comcast

27  $350,401.93 (34.71% of $1,009,512.90 in gross revenues) as lost profits.

28

United States District Court
For the Northern District of California

1    2.    Statutory Damages Under § 553

2    Under Section 553(3)(A)(ii), as an alternative to electing to recover actual damages, "the

3    party aggrieved may recover an award of statutory damages for all violations involved in the action,

4    in a sum of not less than $250 or more than $10,000 as the court considers just." Statutory devices

5    under § 553 are not awarded per device. As the gross revenue, adjusted for market share, exceeds

6    the statutory maximum of $10,000, the Court recommends an award of actual, rather than statutory,

7    damages.

8    3.    Enhanced Statutory Damages

9    Comcast, in addition, seeks enhanced statutory damages. The Court may also, in its

10   discretion, award enhanced statutory damages in the amount of $50,000 pursuant to Section 553

11   (c)(3)(B). Taking Comcast's well-pleaded allegation that the Defendant Tardif violated the Act

12   willfully and for purposes of commercial advantage or private financial gain as true, the Court finds

13   that an award of enhanced statutory damages is appropriate. Given the magnitude of sales made by

14   the Tardifs and the sophisticated nature of their enterprise, the Court finds that the full enhancement

15   of $50,000 is appropriate. *See* 47 U.S.C. § 553(c)(3)(B) (providing that court has discretion to

16   award not more than $50,000 in enhanced statutory damages).

17   **III.    CONCLUSION**

18   For the foregoing reasons, the Court recommends that Comcast's motion for default

19   judgment be granted as to Defendant Stephane Tardif. Since Comcast has established violations of

20   the Cable Communications Act and has proven lost profits as calculated herein, the Court finds that

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

enhanced statutory damages of $50,000 is appropriate.  The Court hereby recommends entry of judgment against Stephane Tardif in favor of Comcast in the amount of $400,401.93.  Because satisfactory service of process upon Jacques Tardif has not been demonstrated, the Court recommends that the motion for default judgment as to Jacques Tardif be denied without prejudice to permit Comcast an opportunity to re-serve that Defendant.


Dated:  March 8, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

United States District Court
For the Northern District of California

21